United States Courts
Southern District of Texas
F I L E D

JUL 15 2021

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA, ex rel.    )    Civil Action No.  4: 21 cv 2297
MIRANDA TYREE and JENNIFER           )
WOOD,                                )
                                     )
        Plaintiffs-Relator,          )    **FILED UNDER SEAL**
                                     )    **COMPLAINT FOR VIOLATION**
                                     )    **OF FEDERAL FALSE CLAIMS**
vs.                                  )    **ACT, 31 U.S.C.§ 3729 ET SEQ.**
                                     )
PSYCHIATRIC SOLUTIONS P.C.;          )
LONGVIEW PSYCHIATRIC CENTER          )
PLLC; LONGVIEW PSYCHIATRIC           )
CENTER LP; and DR. ASHOK JAIN        )
                                     )
        Defendants.                  )    DEMAND FOR JURY TRIAL
_____)

## COMPLAINT

Relators, MIRANDA TYREE and JENNIFER WOOD (referred to herein as "Relator"),

on behalf of herself and the United States of America, bring this action against PSYCHIATRIC

SOLUTIONS    P.C.;    LONGVIEW    PSYCHIATRIC    CENTER    PLLC;    LONGVIEW

PSYCHIATRIC CENTER LP; and DR. ASHOK JAIN (collectively "Defendants"), for violations

of the Federal False Claims Act ("FCA"), 31 U.S.C. §3729, *et seq.,* to recover all damages, civil

penalties and other recoveries provided for under the FCA.  For their cause of action, Relators aver

as follows:

## SUMMARY OF THE ACTION

1.      Relator, MIRANDA TYREE and JENNIFER WOOD, on behalf of the United

States and themselves, bring this case to challenge Defendants' ongoing scheme to defraud the

United States.  Specifically, Defendants – who collectively owned and operate a series of

psychiatric treatment clinics – have schemed to defraud and have in fact defrauded the United

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 2 of 21

States by (1) billing the United States for services that were never performed; and (3) billing the United States for services where the patients did not meet the mandatory Medicare criteria for the billed services.

2.     Defendants for the period of time that they have owned and operated the psychiatric treatment clinics at issue and have administered and billed for Transcranial Magnetic Stimulation (TMS) sessions: have through implementation of policies procedures and directives and by facilitating the issuance of falsified documents and medical records regularly and knowingly billed Medicare and other insurance providers for TMS sessions never performed and/or for TMS sessions performed on individuals that did not need or qualify for the same and/or where administered without the requisite supervision and thus did not meet the mandatory Medicare billing criteria.

a.   For beneficiaries covered by Medicare Part A and/or B, Medicare reimburses psychiatric treatment facilities on a per session basis for all allowed TMS sessions rendered.  The average rate that Medicare pays each provider for each TMS session is $206.00.

3.     Relators, MIRANDA TYREE and JENNIFER WOOD, reported these schemes to defraud internally, but Defendants refused to take any meaningful corrective action.  Prior to filing suit Relator, MIRANDA TYREE reported the fraud alleged herein to the Medicare Fraud Hotline.

**PARTIES**

4.     Relator, MIRANDA TYREE ("TYREE") is a former employee of Defendant, PSYCHIATRIC SOLUTIONS P.C., is a resident of Longview, TX and  has standing to bring this action pursuant to 31 U.S.C. § 3730(b)(1).  Relators' Complaint is not based on any other

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 3 of 21

individuals prior disclosures of the allegations or transactions discussed herein in a criminal, civil, or administrative hearing, lawsuit or investigation, or in a Government Accounting Office or Auditor General's report, hearing, audit or investigation, or from the news media.

5.      Relator, JENNIFER WOOD ("WOOD") is a former employee of Defendant, PSYCHIATRIC SOLUTIONS P.C. is a resident of Longview, TX and has standing to bring this action pursuant to 31 U.S.C. § 3730(b)(1).   Relators' Complaint is not based on any other individuals prior disclosures of the allegations or transactions discussed herein in a criminal, civil, or administrative hearing, lawsuit or investigation, or in a Government Accounting Office or Auditor General's report, hearing, audit or investigation, or from the news media.

6.      Relators bring this action on behalf of the United States of America (hereafter, "United States").   The United States is a Plaintiff on behalf of the U.S. Department of Health & Human Services ("HHS"), the Centers for Medicare & Medicaid Services ("CMS"), and other federally funded health care programs, including Medicare.

7.      Defendant, PSYCHIATRIC SOLUTIONS P.C., ("PSYCH PC") is a Texas professional corporation with its principal mailing address at P.O. Box 18904, Sugar Land, TX, 77479.

8.      At all times relevant to this Complaint, Defendant, DR. ASHOK JAIN has served as the President and owner of PSYCH PC.

9.      At all times relevant hereto Defendants DR. ASHOK JAIN and PSYCH PC owned and operated the following psychiatric treatment centers where TMS services were offered:

    a.  Psychiatric Solution PC located at 1201 Creek Way Drive Suite C, Sugar Land, TX 77478-4569 ("Sugar Land Clinic").

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 4 of 21

b. Psychiatric Solutions PC-Lake Jackson located at 473 This Way, Lake Jackson, TX 77566 ("Lake Jackson Clinic").

c. Psychiatric Solutions PC-Houston located at 7080 Southwest Freeway, Houston TX, 77074 ("Houston Clinic").

d. Psychiatric Solutions PC-Sealy located at 1036 N Circle Drive, Sealy TX, 77474 ("Sealy Clinic").

e. Psychiatric Solutions PC-Longview located at 613 N. Third St., Longview, TX, 75601 ("Longview Clinic").

10.     PSYCH PC was assigned the National Provider Identifier (NPI) of 1316192016 on or about 11/21/2008 and Medicare PECOS PAC ID of 335298967, and  Medicare Enrollment ID number of O20090601000209.

11.     Defendant, LONGVIEW PSYCHIATRIC CENTER PLLC, ("LONGVIEW PLLC") is a Texas limited liability corporation with its principal office and place of business located at 613 N. Third St., Longview, TX, 75601 (the "Longview Clinic").

12.     At all times relevant to this Complaint, Defendant,  LONGVIEW PLLC, is the parent corporation of and held 100% ownership interest in Defendant LONGVIEW PSYCHIATRIC CENTER LP.

13.     At all times relevant to this case Lakshay Jain, the son of DR. ASHOK JAIN, was listed with the Texas Secretary of State as the owner of Defendant LONGVIEW PLLC, however, Defendant DR. ASHOK JAIN and PSYCH PC had complete control of the day to day operations of the Longview Clinic and DR. ASHOK JAIN was the provider associated with said clinic.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 5 of 21

14.     LONGVIEW PLLC was assigned the National Provider Identifier (NPI) of 1477197150 on or about 11/05/2019. Defendant DR. ASHOK JAIN was the assigned "provider" of Medicare related services billed at the Longview Clinic.

15.     Defendant, LONGVIEW PSYCHIATRIC CENTER LP, ("LONGVIEW LP") is a Texas limited liability company with its principal office and place of business at 613 N. Third St., Longview, TX 75601.

16.     Defendant DR. ASHOK JAIN is a resident of Sugar Land TX who is licensed as a Medical Doctor/Psychiatrist in the state of Texas with license number K1483. He is the authorized official associated with all of the subject clinics and his medical specialization is psychiatry & neurology (psychiatry) with more than 34 years of experience. The NPI number of DR. ASHOK JAIN is 1780680470 and was assigned on June 2005. DR. ASHOK JAIN was assigned the PECOS PAC ID of 2365420270. The practitioner's primary taxonomy code is 2084P0800X (TX).

17.     Relators, TYREE and WOOD, worked primarily out of the Longview Clinic. TYREE was employed as a receptionist and finally as an office manager and WOOD was employed as an APRN, PMHNP-BC – Nurse practitioner. Relator, TYREE, worked part time at the Longview Clinic through May 21, 2021. Relator, WOOD, worked part time at the Longview Clinic through May, 21, 2021.

18.     At all times relevant to this Complaint, the Defendants operated as an integrated enterprise and the fraudulent conduct described herein is attributable to each of them.

## JURISDICTION AND VENUE

19.     Jurisdiction is founded upon the FCA, 31 U.S.C. §3729, *et seq.,* specifically 31 U.S.C. §3732(a) and (b), and also upon 28 U.S.C. §§1331 and 1345.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 6 of 21

20.     Venue in the Southern District of Texas is appropriate under 31 U.S.C. §3732(a) in that, at all times material to this civil action, one or more of the Defendants transacted business in the Southern District of Texas or submitted or caused the submission of false claims in the Southern District of Texas.

21.     Relators are providing the United States with a full written disclosure of substantially all material facts, as required by the FCA, 31 U.S.C. §3730(b)(2).

## APPLICABLE LAW

### I.     THE FEDERAL FALSE CLAIMS ACT

22.     The FCA provides, in part, that any entity that (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States for damages and penalties. 31 U.S.C. §3729(a)(1)(A)-(B).  Additionally, the FCA prohibits knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government. 31 U.S.C. §3729(a)(1)(G).

23.     A person acts "knowingly" under the FCA when he or she "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. §3729(b)(1)(A). No proof of specific intent to defraud is required by the FCA. 31 U.S.C. §3729(b)(1)(B).

24.     Under the FCA, an "obligation" is defined as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 7 of 21

relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. §3729(b)(3).

25.     FCA violations may result in civil penalties of between $5,500 and $11,000 per false claim, plus three times the amount of damages sustained by the Government as a result of the illegal conduct. 31 U.S.C. §3729(a).

26.     Fraudulently billing Medicare for TMS services is a violation of the FCA.

## II.     MEDICARE PAYMENTS UNDER MEDICARE PARTS  B & C

### A.     Payments under Part B and or Part C

27.     Part B of the Medicare Program and Medicare Part C provides benefits to Medicare eligible participants that cover, among other services, psychiatric treatment and particularly Transcranial Magnetic Stimulation ("TMS") treatments provided under the direction of a licensed Medical provider to qualifying individuals. The average Medicare reimbursement rate for TMS treatments is approximately $206.00 per treatment.

28.     Medicare Part B is a voluntary insurance program providing supplemental medical insurance benefits to aged and disabled enrollees.  42 U.S.C. §1395j.

29.     For covered beneficiaries in receiving TMS treatments, Medicare Part B and/or Part C insureres will cover certain forms of reasonable and medically necessary TMS treatments usually admonished in repeated treatments of up to 36 separate sessions.

30.     Medicare Part B will typically pay 80% of the cost of these therapy services, with the beneficiary responsible for the remaining 20%. *See* U.S.C. §§1395l(a)(8), 1395m(k).

31.     Medicare Part B and Part C will not pay for any expense that is "not reasonable and necessary for the diagnosis and treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. §1395y(a)(1)(A).

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 8 of 21

## BACKGROUND FACTS

32.     Defendants operates multiple psychiatric care centers throughout south Texas where they offer and administer Transcranial Magnetic Stimulation (TMS) therapy to chronically depressed patients.

33.     Transcranial magnetic stimulation (TMS) is a noninvasive method of brain stimulation. The technique involves placement of a small coil over the scalp and passing a rapidly alternating current through the coil wire which produces a magnetic field that passes unimpeded through the brain. Depending on stimulation parameters (frequency, intensity, pulse duration, stimulation site), repetitive TMS (rTMS) to specific cortical regions can either increase or decrease the excitability of the affected brain structures. The procedure is usually carried out in an outpatient setting and does not require anesthesia or analgesia. Transcranial magnetic stimulation has been investigated in the treatment of various disorders, primarily depression. In 2008 the U.S. Food and Drug Administration (FDA) granted 510(k) marketing clearance as a "de novo" device (assessed as low risk, no predicate device) for NeuroStar® TMS to be utilized as a Class II rTMS device for the treatment of major depressive disorder in patients who had not responded to one adequate trial of antidepressant medication.

34.     Repetitive transcranial magnetic stimulation (rTMS) is only considered medically necessary in adults who have a confirmed diagnosis of major depressive disorder (MDD), single or recurrent episode and meet the following criteria:

      a.     Resistance to treatment as evidenced by a lack of a clinically significant response to four (4) trials of psychopharmacologic agents in the current depressive episode;

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 9 of 21

b.  Two different agent classes, at or above the minimum effective dose and duration and includes trials of at least two (2) evidence-based augmentation therapies; or

c.  Inability to tolerate psychopharmacologic agents as evidenced by four (4) trials of psychopharmacologic agents with distinct side effects; or

d.  History of response to rTMS in a previous depressive episode; or

e.  History of response to electroconvulsive therapy (ECT) in a previous or current MDD episode, or inability to tolerate ECT, and rTMS is considered a less invasive treatment option; and

f.  A trial of an evidence-based psychotherapy known to be effective in the treatment of MDD of an adequate frequency and duration without significant improvement in depressive symptoms as documented by standardized rating scales that reliably measure depressive symptoms; and

g.  The rTMS treatment is delivered by a device that is FDA-approved or –cleared for the treatment of MDD in a safe and effective manner. rTMS treatment should generally follow the protocol and parameters specified in the manufacturer's user manual, with modifications only as supported by the published scientific evidence base; and

h.  The order for treatment (or retreatment) is written by a physician (MD or DO) who has examined the patient and reviewed the record. The physician must have experience in administering rTMS therapy and the treatment must be given under direct supervision of this physician, i.e., he or she must be in the area and be immediately available.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 10 of 21

35.     Defendants accept Medicare, Medicaid and privately insured patients.  However, at any given time, the majority of its patients are covered, at least in part, by Medicare.

36.     The fraudulent schemes set forth in this Complaint all arise from Defendants implementation of policies procedures and directives and by facilitating the issuance of falsified documents and medical records regularly and knowingly requiring their employees to bill Medicare and other insurance providers for TMS sessions never performed and or for TMS sessions performed on individuals where the individuals did not or the manner in which the service was rendered did not meet the mandatory Medicare billing criteria.  .

37.     Accordingly, Relators filed this *qui tam* Complaint.

## DEFEDANTS' SCHEMES TO DEFRAUD

**I.      DEFENDANTS BILLED MEDICARE FOR TMS TREATMENTS NEVER GIVEN**

38.     Relators, TYREE and WOOD, observed office manager Ms. Sneha Gurajala (at the direction of DR. ASHOK JAIN) submit thousands of Medicare and private insurance billings for TMS treatments on patients that did not actually receive the TMS treatments being billed for.

39.     To facilitate this fraud documentation was created for patient visits that never occurred in order to submit TMS billing to Medicare.

40.     DR. ASHOCK JAIN concocted schemes to pressure patients into agreeing to TMS treatments that they did not need. For example, DR ASHOCK JAIN would on a regular basis as part of his assessment of patients have Sneha Guarhala, the Longview Clinic office manager, make the patient fill out a fake ADHD questionnaire that Sneha had printed from the internet and added other information to make it look "legit" and then DR. ASHOCK JAIN would tell the patient they would have to pay for ADHD testing. The cost for the testing was anywhere between $500-$1500.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 11 of 21

If for some reason, the patient did not have that kind of cash, which was more often than not, DR. ASHOCK JAIN and Sneha would then make a "deal" with the patient. If the patient signed up for 32 TMS treatments, they either didn't have to pay the testing fee or they could make small payments as long as they signed the TMS forms and agreed to TMS therapy.

41.     Defendants would also coerce patients into agreeing to unneeded and unwanted TMS sessions by demanding that all patients be seen every 2 weeks, unless they signed up for TMS. Defendants did so knowing that patients would get tired of paying high co-pays for each visit and could not afford to keep coming.

42.     In addition to coercing patients to consent to TMS sessions, Defendants utilized a scheme of fabricating TMS letters/orders for each TMS session. TYREE and others were trained and told that they needed to prepare TMS letters/orders prescribing TMS treatments for patients that had never been assessed by a qualified physician to determine if they needed or were qualified to receive TMS sessions. At the outset, being new TYREE complied. TYREE was given a list of patients on an excel spreadsheet and a list of 36 dates for each patient to receive TMS sessions. There was a TMS form/template that was used for each patient with a diagnosis code that stayed the same for everyone. TYREE was instructed to change the patients name, date of birth and add the next date from the excel spread sheet and save it and go on to the next patient. Each patient had 36 letters because each patient had 36 sessions of TMS they were supposed to complete according to the guidelines per Sneha and DR ASHOCK JAIN. When TYREE inquired why these letters were being prepared in advance of any TMS treatment or evaluation she was advised that they needed to be completed so that a Dr. Frank Murphy M.D., a physician that Defendants had contracted with to assist in the fraud, could sign the letters/orders when he stopped by the clinic,

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 12 of 21

which he did only for a period of time long enough to sign hundreds of letters.  Dr. Murphy never saw or assessed any of the patients nor did he ever supervise any of the TMS sessions ordered.

43.     Relators observed and witnessed that patients rarely showed up for any of the scheduled TMS sessions, yet Defendants would then generate and bill their Insurance provider and/or Medicare for each TMS treatment despite that the fact that no such sessions were ever actually given.

44.     The amounts billed by Defendants to Medicare is approximately $350 per session and there was a requirement set by DR. ASHPK JAIN that patients must be scheduled and billed for 36 sessions.

45.     TYREE after observing that numerous patients did not show up for scheduled TMS sessions yet bills to Medicare and Insurance companies were being submitted and generated for the same started asking Sneha the Office Manager questions about the scheduled TMS sessions. Sneha responded that "the patients signed the TMS forms and know they are supposed to come in and if they don't come in, it's not our fault."

## II.     DEFENDANTS BILLED MEDICARE FOR TMS TREATMENTS NOT PROPERLY GIVEN OR NEEDED.

46.     Relators, TYREE and WOOD observed and witnessed that DR. ASHOK JAIN was rarely present in the office when TMS treatments that he had ordered were administered. In fact in the last year that Relators worked at the Longview Clinic DR. ASHOK JAIN was only present in the clinic 2 times and never supervised or administered TMS treatments on patients as required by Medicare. It is not uncommon for Defendants to bill Medicare for multiple TMS sessions on the same day for the same patient, or to bill for more TMS sessions per day than could have possibly been given.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 13 of 21

47.    Dr. Frank Murphy, M.D. (Deceased) signed falsified documents at the Longview

and possibly other clinics certifying patients qualify for TMS and never actually saw the patients,

nor was he ever present at the clinic when TMS sessions he ordered were performed.

48.    There was not a psychiatrist who worked in the Longview Clinic. Instead, Relator

WOOD, an ARNP who specialized in Psychiatry, was the only person in the clinic with any

medical training when TMS sessions were administered.  Relator WOOD was not qualified to

supervise TMS treatments on her own.

49.    Dr. Murphy did not work at the Longview Clinic or any Psychiatric Solutions PC

clinic. Instead he contracted with Defendants and was paid to sign the TMS letters because there

was supposed to be an MD in the office to oversee TMS. He did not attend or oversee any TMS

Treatments for any of the letters he signed

50.    Insurance companies were billed up to $2000 and more for a single session of TMS,

Medicare was billed up $350 for each session and each patient would be billed for 36 sessions.

51.    Relators were able to verify that a number if not all of the letters /orders for TMS

treatment were falsified and fraudulent. For example, TYREE reviewed TMS letters of a patient

that she personally knew, that came in 2 times for TMS and quit coming. The letters for each of

36 treatments that DR. ASHOK JAIN had signed falsely stated that this patient came to his office

multiple times with multiple problems, for example, suicidal thoughts, saying she was in a mental

facility numerous times, even stated she had a brother that committed suicide by a gun shot to the

head. None of these statements were true. The letter would further state that DR. ASHOK JAIN

had spoken to the patient each and every time she came into the office, but since the patient only

came in for two TMS sessions, and since DR. ASHOK JAIN was never present nor consulted with

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 14 of 21

her remotely, these statements were pure fabrications.This was a common practice with most all TMS patients.

52.     Relators reviewed and as indicated above also prepared the TMS form letters. They were form letters as they contained the same wording, stating that the patient was depressed on most days and a little worse on other days, but DR. ASHOK JAIN would mention that TMS is helping the patient because maybe they were not as depressed on some days. The statements were made without any consultation or assessment of the patient being done.

53.     The American Medical Association (AMA) created three distinct Current Procedural Terminology (CPT) codes for coding and billing purposes to report TMS Therapy to an insurance carrier and/or Medicare.

54.     CPT code 90867 was created to report treatment-planning services during the initial patient visit. This includes determining the patient's cortical neuron excitability or motor threshold (MT) value, determining and storing the cortical landmark coordinates corresponding to the location where MT was determined, determining and storing the treatment location coordinates, and selecting and storing treatment parameters for a given treatment protocol and the first treatment and delivery session.

55.     CPT code 90868 was created to report services for each session when treatment is delivered and patient management services are provided. For the initial visit (Day 1 of TMS Therapy) when a treatment planning session and a treatment delivery session are completed, 90867 would include both services for the same day. On subsequent treatment days, when only treatment delivery and management is provided, only 90868 would be reported.

56.     CPT code 90869 was created for those individual patient cases when re-determining the motor threshold (MT) is clinically appropriate.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 15 of 21

57.     Relators were able to obtain billing data for TMS evaluations and sessions provided to patients at the Longview Clinic which includes the relevant CPT codes for a few month period of time in 2021. A search of the data obtained which is for a small portion of the relevant period of time shows that:

    a.   CPT code 90867 was billed 49 times;

    b.   CPT code 90868 was billed 1128 times; and,

    c.   CPT coder 90869 was billed 20 times.

58.     Defendants engaged in a pattern of excessive overbilling for TMS treatments on a regular and daily basis. A review of the billing data obtained also evidences how Defendants fraudulently billed for TMS treatments on a daily basis. For example a review of the data reflects that on April 2, 2021 DR. ASHOK JAIN apparently administered TMS treatments to 42 different patients at the Longview Clinic.  Relators worked on said date, are familiar with what procedures were done and can identify that most if not all of the treatments billed on this date where either never given or if given that none were supervised by a qualified physician and/or they were given to patients who did not qualify for the same.

59.     The vast majority of billings by Defendants for CPT codes 90867, 90868 and 90869 were for procedures never given or for procedures performed on patients who did not qualify for the same and the vast majority of procedures actually performed were performed without the requisite supervision of a qualified physician on the premises. As such the vast majority of bills submitted to Medicare for the same are fraudulent.

60.     A billing summary included in the billing data obtained by Relators shows that the Longview Clinic alone generated 104,708 separate charges for TMS and/or related procedures and that 104,612 of those charges were approved and paid for.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 16 of 21

61.     Relators observed and learned that the fraud that they observed taking place as alleged herein was taking place at all of the clinics run by Defendants.

62.     Relators estimate that at least 75% of all charges submitted by Defendants to Medicare for TMS related services (CPT codes 90867, 90868 and 90869) were fraudulent as identified and asserted herein.

63.     Relators and others stated that it was inappropriate to falsify documentation and submit fraudulent bills for payment of TMS related services on multiple occasions.

64.     In response to Relators objections and the objections of others, Relators and others were admonished and basically told that "this is how DR. ASHOK JAIN instructed it be done and how it would be done and if they had any further complaints they would be fired".

65.     Relators and other employees of Defendants confided with each other that they felt that the TMS related activities were illegal and inappropriate.

66.     Defendants refused to pursue or meaningfully investigate the fraud committed at its clinics for the express purpose of maximizing the reimbursements received for Medicare patients.

## DAMAGES

67.     The Key metric for the calculation of losses sustained by the United States as a result of Defendants' Medicare fraud would include the average rate of reimbursement paid to the Defendants for CPT codes 90867, 90868 and 90869.

68.     For the purposes of this damages analysis, assuming that Defendants on average fraudulently submitted 100,000 charges per year per clinic through their fraudulent scheme, Relators estimate that Defendants fraudulently billed Medicare for $35,000,000.00 per year.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 17 of 21

69.     The estimated total loss sustained by the United States as a result of Defendants'

fraudulent scheme is probably in the hundreds of millions range, or around 80% of Defendant's

total Medicare revenues from TMS billings for the statutory recoverable period of time.   A full

calculation of the damages will require an extensive review and audit of all pertinent medical and

billing records of Defendants

## COUNT I

### Worthless Services Billed to Medicare by Defendants,
### in Violation of the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A)

70.     Relator realleges and incorporates the above paragraphs as if fully set forth herein.

71.     At all times relevant to this Complaint, Defendants knowingly presented, or caused

to be presented, false and fraudulent claims for payment for Medicare covered patients receiving

TMS  care at its five clinics.

72.     Specifically, Defendants sought and received payments for Medicare patients,

based on Defendants' practices of providing medically unnecessary TMS services and/or TMS

services that were not supervised by a qualified physician as mandated by Medicare.

73.     At all times relevant to this Complaint, Defendants also knowingly presented, or

caused to be presented, false and fraudulent documentation to support claims for payment or

approval to the United States through the Medicare Program, including claims for TMS services

provided to patients of Defendants that were neither reasonable nor medically necessary for those

patients and/or TMS services that were not supervised by a qualified physician as mandated by

Medicare.

74.     By virtue of the false or fraudulent claims presented, or caused to be presented by

Defendants, the United States has suffered damages.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 18 of 21

75.     Defendants are joint and severally liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

## COUNT II

**Billing Medicare for Services Not Rendered,
in Violation of the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(A)**

76.     Relator realleges and incorporates the above paragraphs as if fully set forth herein.

77.     At all times relevant to this Complaint, Defendants knowingly presented, or caused to be presented, false and fraudulent claims for payment for Medicare covered patients allegedly receiving TMS care at its five clinics.

78.     Specifically, Defendants sought and received payments for Medicare patients, based on Defendants' practice of reporting and billing for TMS treatments that Defendants never actually provided to patients.

79.     By virtue of the false or fraudulent claims presented, or caused to be presented by Defendants, the United States has suffered damages.

80.     Defendants are joint and severally liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

## COUNT III

**Creation and Use of False and Fraudulent Documents
Material to the United States' Decisions to Pay Claims, in Violation of the
Federal False Claims Act, 31 U.S.C. §3729(a)(1)(B)**

81.     Relator realleges and incorporates the above paragraphs as if fully set forth herein.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 19 of 21

82.     At all times relevant to this Complaint, Defendants have knowingly used, or caused to be made or used, false records or statements material to their false and fraudulent claims for payment to the United States.

83.     Such false records include, without limitation, patient authorizations, assessments and orders for TMS related treatment that fraudulently state that the patient was qualified to receive TMS or that the same was needed and appropriate to that patient during the relevant period of time and fraudulently obtained physician orders and that allowed for fraudulently billing of Medicare.

84.     These false and fraudulent representations were material to the United States' decision to reimburse Defendants at particular reimbursement rates for each particular patient.

85.     Accordingly, by virtue of the false and fraudulent records knowingly made, used, or caused to be made or used by Defendants, the United States has suffered damages.

86.     Defendants are joint and severally liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

## COUNT IV

**Retention and Concealment of Overpayments Made Under Medicare Parts A and B
in Violation of the Federal False Claims Act, 31 U.S.C. §3729(a)(1)(G)**

87.     Relator realleges and incorporates the above paragraphs as if fully set forth herein.

88.     Defendants knowingly concealed or knowingly and improperly avoided their obligations to pay or transmit money to the United States by failing to repay amounts received from the United States for services that Defendants knew had never been rendered or to which they knew they were not entitled.

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 20 of 21

89.    Defendants knew that the United States had paid for TMS services billed by Defendants but that had never been performed and/or that were not medically necessary and/or performed without the required medical supervision.

90.    Defendants also knew that the United States had paid for TMS services under both Medicare Part B and Medicare Part C that Defendants knew were not medically reasonable or authorized under Medicare billing criteria.

91.    By virtue of Defendants' knowing concealment and avoidance of their obligations to pay money to the United States, the United States suffered damages.

92.    Defendants are joint and severally liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

## PRAYER FOR RELIEF

Relators respectfully requests that this Court enter judgment against all Defendants as follows:

A.    That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint, as provided by the FCA, 31 U.S.C. §3729 *et seq.;*

B.    That civil penalties of $11,000 be imposed for each and every false claim that Defendants presented to the United States;

C.    That pre- and post-judgment interest be awarded;

D.    That the Court grants permanent injunctive relief to prevent any recurrence of violations of the FCA for which redress is sought in this Complaint;

United States of America, ex. rel. Miranda Tyree et al vs. Psychaitric Solutions P.C. et al.
Complaint Pursuant to The Federal False Claims Act, 31 U.S.C. §3729, *et seq.*
Page 21 of 21

E.      That Relators be awarded the maximum percentage of any recovery allowed to them pursuant to the FCA, 31 U.S.C. § 3730(d)(1) and (2);

F.      That Relators be awarded all costs and expenses of this action, including statutory attorneys' fees, expenses, and costs as permitted by 31 U.S.C. §3730(d); and

G.      That this Court awards such other and further relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Relators, on behalf of themselves and the United States, demand a jury trial on all claims alleged herein.

DATED this 14th day of July, 2021.

CHRISTOPHER C. COPELAND, P.A.
1003 W. Indiantown Road, Suite 208
Jupiter, FL  33458
561-691-9048 (office)
866-259-0719 (FAX)
Primary e-mail:  Chris@CopelandPA.com
Secondary e-mail:  Carla@CopelandPA.com

/s/ Christopher C. Copeland
CHRISTOPHER C. COPELAND, ESQ.
Florida Bar #938076
*Pro Hac Motion filed
*Attorney for Plaintiffs-Relators*